**E-Filed 4/19/2010**

# IN THE UNITED STATES DISTRICT COURT

## FOR THE NORTHERN DISTRICT OF CALIFORNIA

### SAN JOSE DIVISION

| | |
|---|---|
| JULIA A. EDDINGS,<br><br>    Petitioner,<br><br>vs.<br><br>JAMES EDDINGS,<br><br>    Respondent.<br>_____<br>JAMES EDDINGS,<br><br>    Plaintiff,<br><br>v.<br><br>FIDELITY EMPLOYER SERVICES COMPANY LLC; AT&T PENSION BENEFIT PLAN,<br><br>    Defendants. | Case Number C 09-5549 JF (PVT)<br><br>**ORDER[1] GRANTING DEFENDANTS' MOTION TO DISMISS**<br><br>Re: Docket Nos. 5, 6, 8, 13, 14 |

Defendants Fidelity Employer Services Company LLC ("Fidelity") and AT&T Pension Benefit Plan (collectively, "Defendants") move to dismiss Plaintiff's claim for division and payment of his former wife's pension plan. Pursuant to the discussion on the record at the motion hearing on April 16, 2010, the motion will be granted, with leave to amend.

---

[1] This disposition is not designated for publication in the official reports.

Case Number C 09-5549 JF (PVT)
ORDER GRANTING DEFENDANTS' MOTION TO DISMISS
(JFLC1)

## I. BACKGROUND[2]

Plaintiff James Eddings ("Plaintiff") and his former wife Julia Eddings ("Julia") married in 1971 and separated in 1988. Plaintiff's Declaration in Support of Motion for Plan Division at 1. In May 1992, Plaintiff and Julia stipulated to a judgment dividing their community assets. Plaintiff asserts that the judgment was to include a division of Julia's various Pacific Telesis Retirement Plans, which subsequently became the AT&T Pension Benefit Plans. *Id.* at 2-3. On May 19, 1992, Plaintiff moved to join the Plans in the family-law action. Plaintiff's Request for Judicial Notice ("RJN"), Ex. 3 (copy of the motion for joinder stamped as filed by the Monterey County Clerk on May 19, 1992). Defendants appeared in that action on or about June 1, 1992. *Id.* at 2; RJN, Ex. 4 (Notice of Appearance).[3]

In May 1992, Pacific Bell, a Pacific Telesis Company, allegedly sent a letter to Plaintiff's counsel, Robert J. Pittman, acknowledging receipt of the motion for joinder and indicating that it had "placed a *temporary freeze* on the entire amount of [her] benefits under these plans...until [it] receive[d] a written notice to the contrary or a domestic relations order that awards James Eddings a specific amount or percentage in the plans." *Id.,* Ex. B (Letter from Pacific Bell to Pittman) (emphasis added). In June 1998, Prudential Investments, the administrator for Pacific Telesis Group, allegedly notified Pittman that a "freeze [would] remain on the Participant's benefits until [Prudential] receive[d] either a qualified domestic relations order awarding the alternate payee a share of the benefits or a court order releasing the freeze on the Plan benefits." *Id.,* Ex. A (Notice of Adverse Claim).

In June 2005, Julia requested that Plaintiff waive any interest he might have in her pension plans. *Id.* at 3. Then, in April 2006, Julia notified Plaintiff that her last day as an active

---

[2] In 2009, Plaintiff filed a motion for plan division and attorney's fees in the Monterey Superior Court. Defendants removed the proceeding to this Court pursuant to 28 U.S.C. § 1441(b). The facts discussed in this section are asserted by Plaintiff in his declaration in support of the motion. The facts are accepted as true for purposes of the instant motion to dismiss.

[3] The Court takes judicial notice of the motion for joinder and notice of appearance as they are matters of public record. *See Lee v. City of Los Angeles*, 250 F.3d 668, 688-89 (9th Cir. 2001), citing Fed. R. Evid. 201.

2

employee of AT&T was March 31, 2006. *Id.* In September 2006, Plaintiff, for the first time and with Julia's cooperation, obtained two Qualified Domestic Relations Orders ("QDROs"). On October 2, 2006, before Plaintiff filed the QDROs, the full value of one portion of Julia's pension benefits under certain AT&T Pension Benefit Plans was paid to Julia in the amount of $301,009.42. *Id.* at 4. Julia allegedly continues to receive $531.02 per month from the AT&T Pension Benefit Plan Non-Bargained Program. *Id.* The QDROs that apparently were obtained in September 2006 were not filed until June 26, 2007. *Id.* at 3. At some time prior to August 2007, the various Pacific Telesis Retirement Plans were changed to the AT&T Pensions Benefit Plan, of which Fidelity became the administrator. *Id.* Fidelity determined that only the QDRO for the Pacific Telesis Group ESOP qualified for purposes of Plan division. Plaintiff received $3,452.44 in August 2007. However, Fidelity determined that the QDRO for the AT&T Pension Benefit Plan did not qualify because Plaintiff did not have an assigned shared interest. *Id.*

Plaintiff then filed a motion for division and payment of the pension plan pursuant to California Family Code Section 290. Fidelity objected on procedural grounds, and the motion was withdrawn. In October 2009, more than two years after rejection of the proposed QDRO and more than three years after the benefits were distributed to Julia, Plaintiff filed the instant motion, asserting for the first time a claim directly against Fidelity and AT&T. Plaintiff requests that Fidelity and the AT&T Plan be held jointly liable for his share of the pension benefits plus interest from the date Julia received the alleged lump sum payment, as well as reasonable attorney's fees and costs. *Id.* at 4.

## II. LEGAL STANDARD

**A. Motion to dismiss pursuant to Rule 12(b)(6)**

Dismissal under Fed. R. Civ. P. 12(b)(6) "is appropriate only where the complaint lacks a cognizable legal theory or sufficient facts to support a cognizable legal theory." *Mendiondo v. Centinela Hosp. Medical Center,* 521 F.3d 1097, 1104 (9th Cir. 2008). For purposes of a motion to dismiss, the plaintiff's allegations are taken as true, and the court must construe the complaint in the light most favorable to the plaintiff. *Jenkins v. McKeithen,* 395 U.S. 411, 421 (1969). At the same time, "[w]hile a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need

3

Case Number C 09-5549 JF (PVT)
ORDER GRANTING DEFENDANTS' MOTION TO DISMISS
(JFLC1)

detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (internal citations omitted). Thus, a court need not accept as true conclusory allegations, unreasonable inferences, legal characterizations, or unwarranted deductions of fact contained in the complaint. *Clegg v. Cult Awareness Network,* 18 F.3d 752, 754-755 (9th Cir. 1994). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged-but it has not 'show[n]'- 'that the pleader is entitled to relief.'" *Ashcroft v. Iqbal*, 129 S.Ct. 1949, 1590 (2009) (quoting Fed. R. Civ. P. 8(a)(2)).

Leave to amend must be granted unless it is clear that the complaint's deficiencies cannot be cured by amendment. *Lucas v. Department of Corrections*, 66 F.3d 245, 248 (9th Cir. 1995). When amendment would be futile, however, dismissal may be ordered with prejudice. *Dumas v. Kipp,* 90 F.3d 386, 393 (9th Cir. 1996).

**B. Motion to dismiss pursuant to Rule 12(b)(1)**

Because Article III standing "pertain[s] to a federal court's subject-matter jurisdiction under Article III, [it is] properly raised in a motion to dismiss under Federal Rule of Civil Procedure 12(b)(1) . . .". *White v. Leem,* 227 F.3d 1214, 1242 (9th Cir. 2002). "A Rule 12(b)(1) jurisdictional attack may be facial or factual." *Safe Air For Everyone v. Meyer,* 373 F.3d 1035, 1039 (9th Cir. 2004) (citation omitted). With a factual Rule 12(b)(1) attack, a court may look beyond the complaint to matters of public record without having to convert the motion into one for summary judgment. *See id.* It need not presume the truthfulness of the plaintiff's allegations. *White,* 227 F.3d at 1242, citing *Gemtel Corp. v. Community Redevelopment Agency,* 23 F.3d 1542, 1544 n.1 (9th Cir. 1994).

### III. DISCUSSION
**A. Preemption**

"The preemption doctrine, which has its roots in the Supremacy Clause, U.S. Const., Art. VI, cl. 2, requires us to examine Congressional intent. Preemption may be either express or implied, and 'is compelled whether Congress' command is explicitly stated in the statute's

4

Case Number C 09-5549 JF (PVT)
ORDER GRANTING DEFENDANTS' MOTION TO DISMISS
(JFLC1)

language or implicitly contained in its structure and purpose.'" *Branco v. UFCW-Northern California Employers Joint Pension Plan,* 279 F.3d 1154, 1157 (9th Cir.2002), quoting *Jones v. Rath Packing Co.,* 430 U.S. 519, 525, 97 S.Ct. 1305, 51 L.Ed.2d 604, (1977) (citation omitted). "ERISA's express preemption clause states that the Act 'shall supersede any and all State laws insofar as they may now or hereafter relate to any employee benefit plan...'" 29 U.S.C. § 1144(a). However, like the Supreme Court in *Boggs v. Boggs*, 520 U.S. 833, 841 (1997)*,* "[w]e can begin, and in this case end, the analysis by simply asking if state law conflicts with the provisions of ERISA or operates to frustrate its objects."

A QDRO defines the scope of a nonparticipant spouse's community property interest in pension plans consistent with ERISA. *Boggs,* 520 U.S. at 850. The only proper procedure to obtain benefits following dissolution of a marriage under ERISA and the REA is the use of a QDRO. *Id.* State court orders not approved through the QDRO process are preempted. *Boggs*, 520 U.S. at 846-57 ("QDRO's, unlike domestic relations orders in general, are exempt from both the pension plan anti-alienation provision, § 1056(d)(3)(A), and ERISA's general pre-emption clause, § 1144(b)(7)."). Accordingly, any determination by the state court that any other type of order or joinder of Defendants is sufficient to establish Plaintiff's right to an interest in Julia's pension plan would conflict directly with the provisions of ERISA. 29 U.S.C. § 1056(d) (prohibiting assignment or alienation of ERISA retirement benefits absent an express exception and identifying a QDRO as an exception).[4]

---

[4] In *Pardee v. Pardee*, 112 P.3d 308, 315-316 (Okl. Civ. App. 2004), the court distinguished *Boggs* and held that ERISA did not preempt enforcement of allocation of ERISA benefits in a state-court divorce decree as "the pension plan funds were no longer entitled to ERISA protection once the plan funds were distributed." If this Court were to take this approach, it could determine that ERISA no longer preempts Plaintiff's claim because the benefits already have been paid in full to Julia. However, "[i]n this court's estimation, such lawsuits would appear to go against the various interests which the Supreme Court deemed served by a uniform administrative scheme." *Staelens ex rel. Estate of Staelens v. Staelens,* No. 08-30159-KPN, 2010 WL 94518, at * 8 (D. Mass. Jan. 11, 2010). As the Court indicated in *Kennedy v. Plan Adm'r for DuPont Sav. and Inv. Plan*, — U.S. —, 129 S.Ct. 865 (2009), "[t]he point is that by giving a plan participant a clear set of instructions for making his own instructions clear, ERISA forecloses any justification for enquiries into nice expressions of intent, in favor of the virtues of adhering to an uncomplicated rule: 'simple administration, avoid[ing] double liability, and ensur[ing] that

Case Number C 09-5549 JF (PVT)
ORDER GRANTING DEFENDANTS' MOTION TO DISMISS
(JFLC1)

As his motion currently reads, Plaintiff is attempting to hold the Plans accountable for his purported share of Julia's benefits despite the fact that he failed to file a QDRO prior to distribution of the benefits and contrary to the Plan's determination that the order he subsequently obtained from the state court did not qualify as a QDRO. Accordingly, the claim is preempted. However, as the Court noted at the hearing, Plaintiff may be able to plead a claim for breach of contract or breach of fiduciary duty based upon the alleged promise of Defendants' predecessors-in-interest to freeze distribution of the benefits until receipt of a QDRO or other court order. Accordingly, leave to amend will be granted.

**B. Exhaustion of administrative remedies**

Exhaustion of ERISA claims is not a jurisdictional requirement, but rather is a "prudential" one. *Vaught v. Scottsdale Healthcare Corp. Health Plan,* 546 F.3d 620, 626-27 & n. 2 (9th Cir. 2008).[5] The Ninth Circuit "long ago concluded that 'federal courts have the authority to enforce the exhaustion requirement in suits under ERISA, and that as a matter of sound policy they should usually do so.'" *Id.,* citing *Amato v. Bernard,* 618 F.2d 559, 568 (9th Cir.1980); *see also Diaz v. United Agric. Employee Welfare Benefit Plan & Trust,* 50 F.3d 1478, 1483 (9th Cir.1995) (holding that a plaintiff "must avail himself or herself of a plan's own internal review procedures before bringing suit in federal court.").

While Plaintiff did file a proposed QDRO on June 26, 2007, Defendants contend that he did not follow proper claim procedure after that QDRO was rejected. Defendants point to three administrative procedures that Plaintiff could have used prior to seeking relief directly from the

---

beneficiaries get what's coming quickly, without the folderol essential under less-certain rules.'" *Id.* at 875-76, quoting *Fox Valley & Vicinity Constr. Workers Pension Fund v. Brown,* 897 F.2d 275, 283 (7th Cir.1990) (Easterbrook, J., dissenting)). "It is difficult to believe that these interests would simply fall by the wayside once funds had been distributed, particularly in cases, such as the one at bar, where the participant had the opportunity post-divorce to...file a QDRO." *Staelens,* 2010 WL 94518, at *8 (citation omitted).

[5] Defendants style their motion to dismiss for failure to exhaust the intra-plan procedure as a Rule 12(b)(1) motion for lack of subject matter jurisdiction. Because the Ninth Circuit has held that exhaustion is not jurisdictional but prudential in nature, the Court will resolve this aspect of Defendants' motion under Rule 12(b)(6).

6

Court: (1) attempting to correct the defect identified by the Plan and re-submitting a new proposed QDRO; (2) appealing the denial of the QDRO; and (3) filing a claim for benefits through the Plans' claims procedure.

Plaintiff does not dispute that he failed to pursue these administrative remedies, but he asserts that he did not have a copy of the Plans themselves and thus had no knowledge as to whether such procedures in fact existed at the time of the family-law proceedings in 1992 or at the time he filed the instant action in 2009. In light of these representations, the parties stipulated on the record that Defendants would provide Plaintiff with a copy of the Plans as they existed in 1992 and at the time of filing in 2009.

Because Plaintiff conceivably could plead that he did not exhaust the administrative procedures available to him because doing so would be futile or be inadequate, leave to amend as to this point will be granted.

### IV.  ORDER

Good cause therefor appearing, Defendants' motion to dismiss is GRANTED, with leave to amend. Any amended complaint shall be filed within thirty (30) days of the date Defendants provide Plaintiff with a copy of the Plans as they existed in 1992 and 2009.

IT IS SO ORDERED.

DATED: April 19, 2010

_____
JEREMY FOGEL
United States District Judge

Case Number C 09-5549 JF (PVT)
ORDER GRANTING DEFENDANTS' MOTION TO DISMISS
(JFLC1)